## CALDWELL *v.* PORTER.

If the maker of a note remove into another State after the day of the date, and before its maturity, the holder is not required, in order to charge the indorser, to make any demand of payment.

If the indorser in such case promise, after the dishonor of the note, to pay it, he thereby waives the want of timely notice of the dishonor, and this waiver enures to the benefit of subsequent parties to the note.

Caldwell *v.* Porter.

ASSUMPSIT against the defendant, as indorser of a promissory note, dated April 25, 1842, made payable by one Charles H. Brown to the defendant, or order, for $132.90, on demand, with interest annually.

The evidence tended to show that the defendant sold and transferred the note in question to one Samuel F. Ellenwood, by an indorsement on the back of the note, thus : "June 27, 1843. George Porter." Ellenwood testified that he declined to take it unless Porter would indorse it, and that Porter promised, that, if he would take it, he would pay it, if the signer did not pay it in three months. To this evidence the defendant objected, as tending to change or vary a written contract. But the court overruled the objection.

The evidence tended further to show, that Ellenwood soon after carried the note to Geo. W. Morrison, esquire, and requested him to notify the signer of the note that it was the property of Ellenwood, and to request him to pay it; that Morrison wrote to Brown, who was in Boston, and that Brown answered that he could not then pay it, but would do so when able; that Ellenwood, before the three months expired, told Porter that Brown could not pay it, and Porter then said, " Very well; I will pay it according to my agreement, if Brown does not within the three months;" that at the end of the three months Ellenwood called on Porter again, and told him that Brown had not paid it; that he looked at the note, and then refused to pay it, and said Ellenwood had not fulfilled his agreement about the use of a certain house, which was part of the contract in the purchase of the note; that the note was never presented to Brown for payment, nor any other demand made, except that which was made by Morrison's letter, dated June 27, 1843; that Brown was not able to pay the note at any time in June, July or August, 1843, and Ellenwood sold the note to the plaintiff for $20, after the expiration of the three months.

It also appeared that Brown moved from Manchester to Boston the last of February, 1843, where he continued to reside till October, 1844. Porter was informed by Brown of his intention of removing to Boston, and there was an unsettled account between them, upon which a balance of about $48 was due to Brown, which is not indorsed upon the note ; and in the summer of 1844 Porter told Brown that if the note ever came back into his hands he would indorse the amount upon it.

To the maintenance of the action upon the foregoing evidence the defendant objected, because no demand and notice were shown ; that it appeared that the defendant was guarantor of the note, and there was no count in the declaration charging him as such ; that such guaranty could not enure to the benefit of the second indorsee.

These objections were all overruled by the court, and thereupon a verdict was taken, by consent, for the plaintiff, subject to the opinion of this court.

*D. Clark*, for the defendant. To charge the indorser, there should be demand and notice. No demand has been made in this case, a demand through the post-office not being sufficient. 3 Kent, 75. The note must be presented when demand is made. 17 Mass. Rep. 452 ; 1 Mason's Rep. 176. If there was a demand, there was no sufficient notice to Porter. 13 Mass. Rep. 131 ; 11 Johns. Rep. 187 ; 1 Pick. Rep. 401 ; Chitty on Bills, 400 ; 4 Campb. Rep. 193 ; 3 Kent, 110 ; 4 Mass. Rep. 141 ; 1 Serg. & Raw. 334 ; 9 do. 201 ; Chitty on Bills, 317–319.

The removal of the maker of the note from the State does not excuse the want of a demand and notice. 14 Johns. Rep. 114 ; 3 Kent, 96 ; 7 N. H. Rep. 200. He was gone from the State at the time when the defendant indorsed the note. Every indorsement of a note or bill may be considered as a new bill, drawn by the indorser on the acceptor. 9 N. H. Rep. 564.

Caldwell *v.* Porter.

Demand and notice were not waived. The evidence does not show that he waived any of his rights. In order that a promise to pay the dishonored paper may have such an effect, it is necessary that it be made with full knowledge that the conditions had not been complied with, which the party is supposed to have waived, and on which he has the right to insist. *Farrington* v. *Brown,* 7 N. H. Rep. 271; 1 Conn. Rep. 397; 16 Johns. Rep. 92; 1 D. & E. 712; 4 Taunt. 90. The case does not find that Porter did not know that no demand had been made. The promise was made, not to the plaintiff but to Ellenwood, who could not assign it. 12 Mass. Rep. 14.

*West* and *Morrison,* for the plaintiff, cited Chitty on Bills, 198; Bayley on Bills, 198; 7 N. H. Rep. 200; 5 Car. & P. 437; 5 Pick. Rep. 525; 6 Mass. Rep. 388, 449; 9 do. 155; 12 do. 52.

Woods, J. The defendant indorsed and delivered to Ellenwood the note in controversy, in a form not in any respect unusual, or without the common course of such transactions, unless the prefixing to his signature a minute of the date of the indorsement may be so regarded. The effect of this indorsement is perfectly settled in law. The words which the holder of the note has a right to prefix to it, are such as to express a contract familiarly known in business. An indorsement of a negotiable instrument, is, in effect, a written contract, and is within the rule which precludes the admission of verbal or unwritten evidence, to vary or contradict its implied legal terms. So that, if the evidence that was admitted would show that the party undertook, by verbal declarations at the time of the indorsement, to qualify its import, such evidence must be laid out of the case; especially as it would destroy the value of the security in the hands of a subsequent party to it, who is not shown to have had any notice of any

such declarations, or of any agreement in disparagement of the one which appeared in writing upon the paper itself.

The defendant was therefore clearly an indorser, and not a guarantor of the payment of the note; and, as indorser, he had the right to require, on the part of those who would charge him, a compliance with the usual conditions. Unless he has waived the right, or unless the case forms an exception to the general rule which requires a demand to be made upon the maker, and notice of his refusal to be given to the subsequent party to be charged, the defendant is not liable, except upon the condition that such demand and notice have been executed.

No demand was made upon the maker of the note, except through the mail, and of this no notice was seasonably given to the defendant.

In *Dennie* v. *Walker*, 7 N. H. Rep. 199, it was said, that "a removal without the bounds of the government, after the making of a note, and before it becomes due, and where no place of payment is specified in the note, renders a demand upon the maker of the note unnecessary." So Mr. Justice *Story* (Story on Promissory Notes, sec. 236) states the rule of law to be, that "if the maker has removed his domicil or place of business to another State or country, or, having removed his domicil and place of business to some part of the same State, or country, the new domicil, or place of business, cannot, upon diligent inquiry, be ascertained, then the holder will be excused for non-presentment for payment, and will be entitled to the same recourse against the indorser, as if there had been a due presentment."

Chancellor *Kent* (3 Kent's Com. 96), states the doctrine thus: "If he (the payer) has changed his residence to some other place within the same State, or jurisdiction, the holder must make endeavors to find it, and make the demand there; though, if he have removed out of the State, subsequent to the making of the note or accepting

the bill, it is sufficient to present the same at his usual place of residence." These writers both refer to *Anderson* v. *Drake*, 14 Johns. Rep. 114; *McGruder* v. *Bank of Washington*, 9 Wheat. Rep. 598; Bayley on Bills (Boston Ed.), 126. *Story* also refers to 14 Martin, 511, and *Kent* to 4 McCord, 503.

In *Gist* v. *Lybreed*, 1 Ohio Cond. Rep. 591, the court cite the decision of the Supreme Court of the United States in *McGruder* v. *Bank of Washington*, approving it fully, and say: " It is there settled that the removal of the maker of a note, after it was made and before its maturity, into a different State from that where he resided when the note was made, excuses the holder from making actual demand of payment from the maker. Whether a demand at any other place should be made, is not made a point, or adjudicated upon in that case ; but it seems to us, as a clear consequence of the decision, that such demand is unnecessary. The fact of removal commits the indorser, and dispenses with all demand, unless a particular place is appointed for the payment of the note, in the note itself."

*Anderson* v. *Drake*, 14 Johns. Rep. 114, refers to a decision in a former case, not reported. A note was made in Albany, and no place of payment was designated by its terms. The maker having removed afterwards to Canada, a demand at Albany was held sufficient.

Although some of the authorities advert to a practice of making a demand at the late residence of a maker of a note who has left the State, and hold that such a demand is sufficient, they do not decide that such a demand is necessary; and others declare that such removal from the State, after making the note and before the day of payment, dispenses with the demand altogether, and that the holder may, in such event, pursue his remedy against the maker with the same results as if a demand had actually been made and notified.

Such appear to us to hold the better doctrine, if there be really a conflict, since it is difficult to perceive that a practical benefit could accrue to any party, by requiring the holder to present his paper at a house either deserted or occupied by strangers; and to demand payment where there is no reason for supposing that any provision has been made by the party whose duty it is to make the payment at a different place, at the hands, namely, of the holder of the note.

But the removal of the maker, which dispensed with the demand of payment, did not dispense with the notice required in general, to be given to the indorser of the dishonor of the note. Was there a waiver of such notice? The authorities are clear and uniform to the point that a promise by the indorser to pay the dishonored paper is a waiver of his right to object to the want of the demand and notice, provided it be made with a full knowledge that those pre-requisites have been omitted. *Ladd* v. *Kenney,* 2 N. H. Rep. 340; *Farrington* v. *Brown,* 7 do. 271; *Carter* y. *Burleigh,* 9 do. 558. Here no demand was required to be made upon the maker, as has been shown; and his removal from the State between the day of the date and the day of the maturity of the note was equivalent to a demand, as one of the necessary steps for charging the indorser; and the case finds that the indorser knew of the maker's intention to remove. He knew, when he made the promise to pay, whether he himself had received timely notice of the dishonor, and did not waive any rights in ignorance of the fact that they had not been satisfied.

It is a perfectly familiar principle of law relating to negotiable paper, that one who waives his right to insist upon demand and notice, either before or after the conjuncture at which those conditions should be performed, cannot afterwards insist upon them, or claim any exemption upon the ground of their having been omitted. This

is the case, whether the note has been negotiated after such omission or not. The waiver enures to the benefit of all subsequent parties, as well as those who were parties when the waiver was made, and who were more immediately the parties to the concession. There must be

*Judgment on the verdict.*